UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

Case No: _____

GUS MONDRAGON,

    Plaintiff,

v.

PRIME HEALTHCARE SERVICES- LEHIGH ACRES, LLC
d/b/a LEHIGH REGIONAL MEDICAL CENTER

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, GUS MONDRAGON, by and through his undersigned counsel, sues the Defendant, PRIME HEALTHCARE SERVICES-LEHIGH ACRES, LLC, d/b/a LEHIGH REGIONAL MEDICAL CENTER, and alleges as follows:

**JURISDICTION AND VENUE**

1.    This is an action for damages and to remedy violations of the rights of MR. MONDRAGON under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Florida Civil Rights Act of 1992, as amended ("Chapter 760" or "FCRA"), and the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102, *et seq.* ("FPSWA") to redress injuries done to him by the Defendant, PRIME HEALTHCARE SERVICES-LEHIGH ACRES, LLC, d/b/a LEHIGH REGIONAL MEDICAL CENTER ("Defendant").

2.    The unlawful acts which gave rise to this Complaint occurred within Lee County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

1

## **PARTIES**

3. At all times material hereto, Plaintiff has been a citizen and resident of Lee County, Florida and is otherwise *sui juris*.

4. At the relevant time, Plaintiff was an individual who reported discrimination and, as such, Plaintiff is a member of a protected class under Title VII and Chapter 760 because the terms, conditions, and privileges of his employment were altered.

5. As an individual with first amendment rights, Plaintiff is a member of a protected class under the FPSWA because the terms, conditions, and privileges of his employment were altered because Plaintiff voiced his objection to the illegal activities committed by the Defendant.

6. The FPSWA provides that an employer may not take any retaliatory personnel action against an employee because the employee has: (1) disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation; (2) provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer; (3) objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation. § 448.102, Fla. Stat.

7. Defendant is not a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

8. Defendant has, at all times material hereto, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year.

9. Plaintiff has exhausted his administrative remedies by filing a timely charge for retaliation against the Defendant with the Equal Employment Opportunity Commission, which was dually filed with the Florida Commission on Human Relations.

10. Plaintiff's charge was filed within 300 days after the first instance of retaliation occurred.

11. Plaintiff was issued a Notice of Right to Sue on August 26, 2020. This suit is filed in accordance with that Notice and within the applicable ninety (90) day limitation (a copy of the Notice is attached hereto as Exhibit "A").

12. The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charge.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

13. Defendant hired Plaintiff as an Intensive Care Unit Nurse in September 2008. The Defendant promoted the Plaintiff to Night Shift House Supervisor in February 2014.

14. As a Night Shift House Supervisor, Plaintiff's primary duties and responsibilities included overseeing the operation of the hospital at night.

15. Plaintiff was qualified for his position, based on his experience and training.

16. In August 2017, Mr. Carlos Burke, supervisor, was sexually harassing Deyaneira Mitchell, a female employee. Ms. Mitchell reported the incident to the Plaintiff. The Plaintiff then reported the incident to Ms. Susan Allen, Human Resources Director. After the Plaintiff made the report to Ms. Allen, the Defendant, through Ms. Dana Flores, ICU Director, began to retaliate against the Plaintiff.

17. In September 2017, the Plaintiff took off for vacation. The Plaintiff had to delay his return to work and take FMLA leave due to surgery. Plaintiff returned to work in mid-October 2017.

18. Prior to his vacation, Ms. Julie Banker was the Chief Nursing Officer ("CNO") for the Defendant. When the Plaintiff returned to work after his vacation and FMLA leave, Ms. Banker was no longer the CNO. Instead, the CNO was Mr. Kenneth Sanger. Prior to his return in mid-October, the Plaintiff had never met or worked with Mr. Sanger.

19. Within a week or two of Plaintiff's return to work, Mr. Sanger gave the Plaintiff his annual review. This annual review was poor despite the Plaintiff having received nearly a decade of reviews where Plaintiff exceeded expectations, and there not having been any change in his performance.

20. After the Plaintiff received his review, he requested a meeting with Mr. Sanger to discuss the annual review. On November 10, 2017, Mr. Sanger and the Plaintiff met to discuss the review. At the meeting, Mr. Sanger admitted that he did not have any experience with Plaintiff's work but that, instead, the review was based on "outside sources." Mr. Sanger identified Ms. Flores as the outside source. Ms. Flores was not the Plaintiff's supervisor and, therefore, should not have been involved in the Plaintiff's annual review. In the middle of the meeting, Ms. Flores walked in and accused the Plaintiff of being unprofessional, apathetic, unapproachable, disrespectful, and not a team player. The Plaintiff was shocked because this was the first time he had ever heard any of this criticism. The Plaintiff asked Ms. Flores to identify any specific instance on which she based her opinion, but she was unable to do so.

21. At the conclusion of the meeting, Mr. Sanger refused to make any changes to the retaliatory annual review. As a result of the retaliatory annual review, the Plaintiff did not receive

the pay increase that he would have received if his review had been consistent with his performance and his prior annual review. In addition to the retaliatory annual review, Ms. Flores continued to nitpick and lob baseless criticism at the Plaintiff on a daily basis. She also was rude and sarcastic in addressing the Plaintiff. Before the Plaintiff reported Mr. Burke, Ms. Flores and the Plaintiff had a good work relationship.

22. The Plaintiff called Ms. Allen and told her about the meeting with Mr. Sanger, as well as Ms. Flores's disruption of the meeting. Ms. Allen requested to meet with the Plaintiff. During the meeting, the Plaintiff told Ms. Allen that he didn't think it was proper for Ms. Flores to have input on his review. The Plaintiff reminded Ms. Allen that when he first reported the sexual harassment, the Plaintiff expressed concern of retaliation from Ms. Flores due to her relationship with Mr. Burke. Once again, Ms. Allen dismissed the Plaintiff's concerns.

23. Towards the end of 2017, Mr. Sanger also made the Plaintiff change his schedule to accommodate new hires. This was contrary to Defendant's policy as Plaintiff had many years of seniority with Defendant. Since the Plaintiff feared losing his job, he felt he had no choice but to comply with the schedule change. Meanwhile, the Defendant did not change the schedules of other employees to accommodate new hires. Prior to Mr. Sanger's arrival, James Ponce, House Supervisor, had been working Sunday, Monday, Tuesday, one week, then Sunday, Monday, Tuesday, Wednesday the following week. The Plaintiff worked Wednesday, Thursday, Friday, and Saturday one week, then Thursday, Friday, and Saturday the next week. Mr. Ponce had more seniority than Plaintiff. Mr. Ponce left his position with Defendant, and Plaintiff took over Mr. Ponce's old schedule. The House Supervisor who replaced Mr. Ponce then took over Plaintiff's old schedule. This schedule remained unchanged until Mr. Sanger's retaliatory schedule change.

24. The retaliatory harassment continued. Ms. Flores ignored the Plaintiff when he greeted her or attempted to engage with her. The Plaintiff was always walking on eggshells with Mr. Sanger. Mr. Sanger often accused the Plaintiff of leaving the side entrance door to the hospital open despite the fact that the Plaintiff repeatedly told him that he had never even been in that area. Mr. Sanger accused the Plaintiff multiple times of going into offices he allegedly had no business entering, but the Plaintiff had not been in those offices. Mr. Sanger's tone was always accusatory. The Plaintiff told Mr. Sanger to check the cameras since they virtually covered every square inch of the hospital. Mr. Sanger could have reviewed the security cameras to discover who the culprit was, yet he continued to blame the Plaintiff. One day after the Plaintiff worked a 12-hour shift and was at home sleeping, Mr. Sanger called him, woke him up, and accused him of entering Case Management's office. Mr. Sanger repeatedly harassed the Plaintiff at home, even when Plaintiff was not scheduled for an on-call shift. This all began after the Plaintiff reported the sexual harassment in the workplace. Before this retaliatory treatment, the Plaintiff loved his job and did not have any problems.

25. At some point after Plaintiff reported Mr. Burke, Mr. Burke's employment relationship with Defendant ended.

26. On or around September 12, 2019, a female employee, Ms. Rabel Bajwa, reported to the Plaintiff that she had been sexually harassed and assaulted by her supervisor, Mr. John Pullaro, ICU Manager, in June 2019. The Plaintiff reported the incident to Ms. Christine Dinan, Human Resources Regional Director.

27. On September 19, 2019, Mr. Sanger suspended the Plaintiff. He did not provide the Plaintiff with any explanation for the suspension. When the Plaintiff asked Mr. Sanger for the basis for the suspension, Mr. Sanger said that Human Resources would get in touch with him, but

6

they never did. The Plaintiff reached out to Human Resources but never heard back. The Plaintiff filed a charge with the EEOC on September 27, 2019. The Plaintiff remained on paid suspension until December 3, 2019, when the Defendant terminated him. Yet again, the Defendant retaliated against the Plaintiff for reporting discriminatory conduct.

28. The Plaintiff filed an amended charge with the EEOC on October 1, 2020.

29. Plaintiff has engaged the undersigned attorney to prosecute his claims and is entitled to recover his attorney's fees from Defendant pursuant to statute.

### **COUNT I: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(Retaliation)**

30. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 29, inclusive, as though same were fully re-written here.

31. Plaintiff had the right to voice his grievances that other employees were being discriminated against.

32. When the Plaintiff engaged in the protected activity of reporting the discrimination, the Defendant retaliated against him by targeting him, treating him less favorably than other employees, suspending him, and ultimately terminating him.

33. As a result of Defendant's action, Plaintiff has suffered damages.

34. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff hereby requests this Court declare that Defendant's treatment and termination of Plaintiff was unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, grant Plaintiff judgment against Defendant to compensate him for all past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to his

professional reputation, emotional pain and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by Defendant's discriminatory treatment, and punitive damages in an amount to be determined at trial and in accordance with Title VII; attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as the Court deems just and appropriate.

### COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Retaliation)**

35. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 29 inclusive, as though same were fully re-written here.

36. Plaintiff had the right to voice his grievances that other employees were being discriminated against.

37. When the Plaintiff engaged in the protected activity of reporting the discrimination, the Defendant retaliated against him by targeting him, treating him less favorably than other employees, suspending him and then ultimately terminating him.

38. As a result of Defendant's actions, Plaintiff has suffered damages

39. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA, Chapter 760.

WHEREFORE, Plaintiff hereby requests this Court declare that Defendant's treatment and termination of Plaintiff was unlawful retaliation in violation of the FCRA, grant Plaintiff judgment against Defendant to compensate him for all past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to his professional reputation, emotional pain and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by Defendant's discriminatory treatment, and punitive damages in an amount to be determined at trial

and in accordance with the FCRA; attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT III: VIOLATION OF THE FLORIDA PRIVATE SECTOR WHISTLEBLOWER ACT

40. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 29, inclusive, as though same were fully re-written here.

41. The FPSWA provides that an employer may not take any retaliatory personnel action against an employee because the employee has: (1) disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation; (2) provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer; (3) objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation. § 448.102, Fla. Stat.

42. Plaintiff objected to the Defendant's violations of a law, rule, or regulation.

43. At all times relevant, including at the time of the unlawful treatment and termination, Defendant was aware that Plaintiff had objected to the illegal activities committed by the Defendant.

44. At the time of the unlawful treatment and termination, Plaintiff did perform and excel at the performance of the essential functions assigned to him by the Defendant.

45. Plaintiff was qualified for the position and Defendant only terminated Plaintiff in retaliation for his objection to the illegal activities committed by the Defendant.

46. Defendant is a sophisticated employer who has knowledge of the FPSWA.

47. The failure of Defendant to adhere to the mandates of the FPSWA was willful.

48. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights through the State of Florida, retaliated against Plaintiff on account of his objecting to the illegal activities committed by the Defendant in violation of the FPSWA with respect to their treatment and termination of the Plaintiff.

49. Defendant's treatment and termination of Plaintiff was directly and proximately caused by Defendant retaliating against the Plaintiff for objecting to the illegal activities committed by the Defendant.

50. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from retaliatory actions when objecting to the illegal activities committed by the Defendant.

51. As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered economic losses including back pay, front pay, and compensatory damages for Defendant's willful violation of the FPSWA.

52. Pursuant to the FPSWA, Plaintiff is entitled to costs of this action and reasonable attorney's fees.

53. WHEREFORE, Plaintiff hereby requests that this Court grant Plaintiff judgment against Defendant to include reinstatement of Plaintiff to the same, or an equivalent, position held before Defendant's retaliatory action against Plaintiff; as well as reinstatement of full fringe benefits and seniority rights to Plaintiff; and compensation for past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to her professional reputation, emotional pain and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by Defendant's discriminatory treatment, and punitive damages in an

amount to be determined at trial; attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as the Court deems just and appropriate

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 17th day of September, 2021

By:  /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff